# Exhibit I

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                    SUPERIOR COURT
                                                 C.A. NO: 24CV1728

DAVID A. GLATTLY                    *
ESTATE OF MONICA GLATTLY            *
    *Plaintiff,*                       *
                                    *
v.                                  *          **RECEIVED**   7/1/24   tc
                                    *
KEVIN J. HECHT                      *
    *Defendant.*                       *

## COMPLAINT AND JURY DEMAND

### I. INTRODUCTORY STATEMENT

This is an action brought by Plaintiff David A. Glattly ("Glattly" or "Plaintiff") and the Estate of Monica Glattly against Defendant Kevin J. Hecht ("Hecht" or "Defendant"). Plaintiffs seek to redress the harm caused by Defendant's false and defamatory statements, and interference with Glattly's employment relationship and other claims, which have significantly damaged Glattly's professional reputation and caused both Plaintiffs severe emotional distress and other damages.

### II. PARTIES

1. Plaintiff David A. Glattly, 33° ("Glattly"), is an individual residing in Haines City, Florida, and is the Past Sovereign Grand Commander of the Supreme Council, Ancient Accepted Scottish Rite, Northern Masonic Jurisdiction (NMJ), USA (the "Rite").

2. Defendant Kevin J. Hecht ("Hecht") is an individual residing at 100-5B Joshuatown Road, Lyme, CT.

3. David A. Glattly has been named the Personal Representative of the Estate filed in the Circuit Court of the Tenth Judicial Circuit, Polk County, Florida, Probate Division, No. 23CP-3803, and brings this claim on behalf of the Estate. Monica Glattly ("Monica") died on September 13, 2023, in Florida, where she lived at the time with David A. Glattly.

## III. JURISDICTION AND VENUE

4. At all times relevant to the allegations in this Complaint, Hecht was an Active Member of the Rite, which has a headquarters at 33 Marrett Road, Lexington, MA.

5. At all times relevant to the allegations in this Complaint, Hecht worked for the Rite as an employee based in Massachusetts.

6. Glattly's immediate predecessor hired Hecht in 2017 to serve as the Director of Human Resources, even though Hecht had no experience to qualify for the position.

7. The Rite is headquartered in Lexington, Massachusetts, and most of the events occurred there and/or are connected to the Rite headquarters.

8. This Court has jurisdiction over Hecht because he worked and continues to work in Massachusetts and caused tortious injury in Massachusetts by his actions within the Commonwealth.

9. Venue is proper in the Middlesex Superior Court as the actions complained of herein occurred within this jurisdiction.

## IV. FACTUAL BACKGROUND

**Glattly's History with Freemasonry and the Scottish Rite**

10. Glattly has been a Master Mason for approximately 49 years and joined the Scottish Rite approximately 37 years ago.

11. Freemasonry, often referred to as Masonry, is one of the world's oldest and largest fraternal organizations. It traces its origins to the local fraternities of stonemasons, which from the end

of the 13th century. Today, it is a society that espouses moral and ethical lessons through symbolic teachings and rituals.

12. Freemasonry is structured around a system of degrees, which are progressive levels of membership. A Master Mason is the third of three degrees. Beyond these, there are appendant bodies and higher degrees, such as those in the Scottish Rite, which offer further teachings and rituals.

13. Glattly received the 33rd degree in 2000. The 33rd degree is the highest in the Scottish Rite of Freemasonry, one of Freemasonry's appendant bodies. It is known as the "Inspector General Honorary" and is conferred by the Supreme Council of the Scottish Rite. This degree is not something that can be applied for; it is given as an honor to those who have made significant contributions to the fraternity or to society.

14. Glattly became an Active Member of the Rite in 2002.

15. An Active Member of the Scottish Rite of Freemasonry is a member who holds a position of significant responsibility and authority within the organization. These individuals are typically part of the governing body known as the Supreme Council. The Supreme Council is the highest authority in the Scottish Rite and is responsible for overseeing the activities, administration, and governance of the Rite within its jurisdiction. In addition to the Sovereign Grand Commander, the Supreme Council includes other officers and others who hold specific responsibilities within the organization.

16. Active Members are often those who have been recognized for their outstanding service, leadership, and dedication to the principles and goals of Freemasonry. They may be involved in making key decisions, setting policies, and guiding the direction of the organization.

17. There are two Supreme Councils in the United States: one for the Northern Masonic Jurisdiction (referenced herein) and one for the Southern Jurisdiction. Each council awards

the 33rd degree to a select group of members annually, based on their service, dedication, and leadership within the organization. The 33rd degree symbolizes high achievement, honor, and distinction within Freemasonry.

18. In 2017, the acting Sovereign Grand Commander of the Rite recruited Glattly to apply to be his replacement. The Sovereign Grand Commander is the highest-ranking officer in the Scottish Rite of Freemasonry, particularly within the Supreme Council. The Supreme Council is the governing body of the Scottish Rite, and the Sovereign Grand Commander presides over this council. His role is akin to that of a chief executive officer in a corporate organization, although much more than that.

19. The Active Members unanimously elected Glattly in 2017 to be the Sovereign Grand Commander, and Glattly signed an Employment Agreement with the Rite in connection with that election.

20. Thereafter, Glattly served as the Rite's Sovereign Grand Commander until he was forced to resign, as set forth below.

21. The Sovereign Grand Commander position comes with considerable power, prestige, pay, and benefits.

22. In addition to a healthy six-figure salary and spending account that Glattly enjoyed as the Sovereign Grand Commander, Glattly also lived with his wife Monica in a four-bedroom house in Lexington owned by the Rite, without having to pay any rent or expenses.

23. Glattly served the role of Sovereign Grand Commander proudly and with great success. For just one example, Glattly and his team implemented the highly successful "Not Just a Man, a Mason" campaign.

24. As the name implies, Glattly had sovereign power over the Rite and acted as the CEO and President of the corporations within the organization, overseen by the Supreme Council.

4

25. Glattly intended to remain in the position of Sovereign Grand Commander for the maximum term of 10 years, which would have been approximately 6 more years after his resignation in 2021.

26. Glattly's late wife, Monica, served in an unofficial capacity as an ambassador for the Rite, similar to the role of a First Lady to the President of the United States.

27. By necessity, when Glattly became the Sovereign Grand Commander, Monica had to leave everything behind to serve with him. This included her career, friends, family, and children. Along with Glattly, Monica committed her life to the Rite.

28. Monica's devoted support of Glattly and dedication to the Rite included hosting and participating in social events, charitable activities, and other community functions associated with the organization.

29. Monica very frequently traveled with Glattly to various Scottish Rite events. Among her volunteer responsibilities included: hosting the Scottish Rite ladies; managing and decorating the Commander's house; hosting guests at the house; travel arrangements for the Commander; sending sympathy and get-well baskets and floral arrangements as needed; and many other duties.

30. As the name Sovereign Grand Commander implies, Glattly had supreme power over the Rite and acted as the CEO and President of the corporations within the Supreme Council.

31. Glattly intended to remain in the position of Sovereign Grand Commander for the maximum term of 10 years, which would have been approximately 6 more years after his resignation in 2021.

**Glattly's Supervision of Hecht**

32. During his service as Sovereign Grand Commander, Glattly was Hecht's superior.

33. Hecht apparently did not like Glattly's management style or Glattly personally.

5

34. Early in his tenure, Glattly overheard Hecht disparaging him to another Active Member.

35. Glattly verbally reprimanded Hecht for his insubordinate attitude, but Hecht presented as defiant instead of contrite (the other Active Member involved in the disparagement was contrite and apologized).

36. On another occasion, Glattly instructed Hecht to terminate an employee, "Lisa Smith" (an alias has been used to protect the employee's true identity).

37. Hecht had a friendly relationship with Lisa Smith and appeared reluctant to terminate her until Glattly finally ordered him to do so immediately. This apparently angered Hecht.

38. Hecht mishandled Lisa Smith's termination, which caused legal complications for the Rite.

39. In June 2021, Hecht frequently failed to appear at the Rite's headquarters for work, requiring Glattly to inform Hecht that he needed to be in the office regularly.

40. When he did return to the office on June 28, 2021, on information and belief, Hecht complained loudly to others that he would not have been required to return to the office if he had been DeMolay (DeMolay is part of the "family" of Masons and associated organizations; it is a fraternal organization of young men ages 12 to 21).

41. Several "Senior DeMolays" were members of the staff, and Hecht apparently resented this for some reason.

42. Due to what Glattly viewed as Hecht's shortcomings as the Director of Human Resources, Glattly planned to move Hecht to a different position and hire a professional HR person.

43. Glattly met with his management team to discuss his plan to move Hecht to another position. The circumstantial evidence suggests that one person on the management team informed Hecht about this.

Date Filed 7/1/2024 11:32 AM
Superior Court - Middlesex
Docket Number

**Hecht's Defamatory Letter and Other Actions**

44. The very next week, but before Glattly could move Hecht, Hecht took action against Glattly. On July 4, 2021, while Glattly was away with Monica on Rite business, Hecht distributed a letter that he wrote, which was extremely disparaging and defamatory to Glattly and Monica (the "July 4th Letter").

45. Hecht sent the July 4th Letter to all Active Members of the Rite (62 individuals) and all Emeritus Members of the Rite (48 individuals), a considerable and respectable class of people.

46. The July 4th Letter, or at least large parts of it, was outside of the scope of his employment at the Rite.

47. Hecht sent the letter out of spite because of his malice toward Glattly for Glattly's management actions and intended actions set forth above and for a malignant purpose of harming Glattly to force him out of the Sovereign Grand Commander position.

48. Hecht sought to personally harm Glattly and Monica, as evidenced by, among other things, his inclusion of allegations against Monica in the July 4th Letter, which he later admitted was improper.

49. To the extent that Hecht had any privilege, Hecht abused and exceeded his privilege, as his allegations and publication of the letter were excessive.

50. Even though Monica was not a Member of the Rite or an employee of the Rite, Hecht disparaged and defamed her in his letter.

51. Among other things, in the July 4th Letter:

     o   Hecht falsely accused Glattly of "immoral, unethical, un-Masonic and/or criminal conduct."

- Hecht falsely accused Glattly of ballot fraud arising from the 2020 Annual Meeting, an allegation that, if true, he could have raised before, but decided to do approximately 11 months later. Moreover, the ballot was approved by Peter Samiec, who was elected as the next Sovereign Grand Commander.

- Hecht falsely accused Glattly and/or gave his own opinion of alleged improper hiring practices, even though in his role as Sovereign Grand Commander, Glattly had unfettered discretion over hiring.

- Hecht falsely accused Glattly and/or gave his own opinion of the alleged improper discharge of employees, even though in his role as Sovereign Grand Commander, Glattly had unfettered discretion over terminating employees.

- Hecht gave his own opinion of disparate treatment of employees of the Rite and two other related organizations and suggested that it was "discrimination," even though there was nothing remotely illegal about paying different wages to employees of different organizations.

- Hecht gave his opinion of an alleged toxic work environment at the Rite and complained that dissent was met with retaliation, demonstrating that Hecht did not like being reprimanded for his insubordination.

- Hecht complained that Glattly hired summer interns from DeMolay and allegedly paid for some lodging, meals, or clothes for the young men who served as interns.

- Hecht complained about bonuses to employees, even though Glattly had unfettered discretion over such issues.

- Hecht falsely accused Glattly of permitting underage consumption of alcohol and falsely accused Glattly and Monic of public intoxication. The allegation against

Monica, in particular, served no business purpose whatsoever and was intended only to cause harm and emotional distress to Glattly and Monica.

- ○ Hecht made various false and/or misleading allegations and half-truths about personal expenditures and spending that he attributed to Glattly.

- ○ Hecht made false allegations about violations of the IRS Code, even though the Rite's books were audited and approved by its CPAs.

- ○ Hecht accused Glattly and Monica of "self-dealing" for using credit card rewards, even though reward points customarily and normally belong to employees.

52. Glattly and Monica received the July 4th Letter shortly thereafter, while attending the Shriner's International Session in Houston.

53. Glattly was blindsided by the allegations in the July 4th Letter and became extremely distraught.

54. Monica was even more distraught than Glattly and stayed in her room crying instead of attending the Masonic event scheduled that evening.

55. The July 4th Letter was followed by an anonymous document meant to supplement the Hecht Letter. It contained additional allegations against Glattly and Monica and made hurtful references to their family. On information and belief, the author of this letter at least felt emboldened to send it because of the July 4th Letter, and the author may have acted in concert with Hecht.

56. On July 8, 2021, Glattly provided a detailed response debunking the allegations in Hecht's July 4th Letter. Glattly concluded his detailed response by stating, "Mr. Hecht's accusations have placed a tremendous burden on my spouse and makes her second guess her role and participation in our Fraternity, this is the most disheartening of this entire situation."

57. In a July 9, 2021 email to Active Members, Hecht admitted that his letter was sent not as a "disgruntled employee," but as a "disgruntled Active Member of the Supreme Council, NMJ."

58. In the July 9, 2021 email, Hecht urged the Active Members to form an Investigative Committee to investigate Glattly.

**<u>Investigation of Hecht's Allegations</u>**

59. Hecht's July 4th Letter and his urging led to a very expensive investigation that lasted approximately 2 years.

60. Glattly himself appointed an Investigative Chair, as he felt he had nothing to hide, and was compelled to do so by the circumstances. Glattly appointed other Active Members to the Investigative Committee, individuals that the Chair requested.

61. It became very stressful for Glattly and Monica. Monica, in particular, was greatly affected by the allegations against her, and her health suffered greatly.

62. Glattly also suffered health setbacks that may have been related to the stress of the allegations against him and how they affected Monica.

63. Glattly met with the Investigative Committee on August 13, 2021, with his attorney. The Committee admitted that they had not found any criminal or illegal conduct.

64. Glattly's attorney asked that Hecht apologize to Monica. Hecht admitted to the Executive Session that he was wrong to include Monica in his charges and apologized, but he did not apologize to Monica at that time or later.

65. Although they found no criminal wrongdoing, the allegations caused such an uproar that the Investigative Committee later informed him that they wanted Glattly to resign, and he felt compelled to do so.

66. Glattly announced his retirement while attending a formal session in Cleveland. He did so in a dignified manner, putting on a classy presentation to make the Rite look good.

67. The Rite then hired a law firm to conduct a detailed investigation and audit of Glattly's leadership during his tenure. The investigation and audit proceeded for many months.

68. The investigation was flawed and biased. One Active Member called it a "witch hunt."

69. The current Sovereign Grand Commander, Walt Wheeler, heavily criticized the lawyer hired for the investigation because the lawyer had criticized Wheeler's work as Rite's Treasurer.

70. Commander Wheeler stated that he had "no confidence" in the lawyer hired for the audit/investigation "or his legal opinions whatsoever."

71. This demonstrates that the Rite found Hecht's allegations to be without merit but apparently felt compelled to demand Glattly's resignation and took other actions because Hecht's allegations were so inflammatory that the decision-makers felt compelled to take action.

72. In this instance, the allegations, even though false or largely false, had the potential to significantly harm the Rite's reputation among Active Members, freemasons, and the general public. They could also erode the trust of employees and others and create a tense and uncomfortable work environment. The allegations also had the potential to create legal and compliance issues.

73. Hecht likely realized that simply making allegations would cause a great commotion and could lead to Glattly's downfall.

74. Notably, the law firm hired by the Rite had a conflict of interest and an obvious bias against Glattly as it was also hired to investigate and terminate an employee closely associated with Glattly.

75. After spending such a large amount of money, on information and belief, it became politically expedient for the Rite to accept the findings of the flawed and biased investigation and to more fully turn against Glattly.

76. Rather than publicly admit that it spent many hundreds of thousands of dollars on a witch hunt, the Rite made Glattly, its former Sovereign Grand Commander, the scapegoat.

77. After Glattly spoke out publicly against the facts set forth above, the Rite publically expelled Glattly from the Rite without even notifying him or following his own internal Constitution. The Rite also disparaged Glattly to the Active Members and Emeritus Members.

78. These actions all stem from Hecht's July 4th Letter and his urging for an investigation.

79. Glattly learned that, after Glattly announced his forced resignation, Hecht made it known to others that he wished to become the next Sovereign Grand Commander.

80. Thus, it became apparent that part of Hecht's motivation was to end Glattly's career as the Sovereign Grand Commander to clear the way for him to lobby for the position.

81. Hecht's July 4th Letter also led to personal attacks on Glattly and Monica on social media, including by an Active Member using a pseudonym and other public attacks and comments on the internet.

82. On or about March 12, 2023, Defendant Hecht sent an email to the Supreme Council Actives and Emeriti to further lash out at Glattly.

83. In the email, Hecht alleged that Glattly mishandled Lisa Smith's termination and caused unnecessary severance expenses.

## V. COUNTS

### COUNT I - DAVID GLATTLY
### Interference with Contractual Relations

84. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

85. Plaintiff had a valid and enforceable contract with the Rite and an advantageous contractual relationship with the Rite, which he reasonably expected would continue for many years.

86. The Defendant was aware or should have been aware of the existence of this contract and advantageous contractual relations.

87. Hecht's July 4th Letter did not arise from his job duties at the Rite and was not privileged in any way.

88. To the extent that Defendant had any privilege, he abused the privilege or exceeded the privilege.

89. Defendant intentionally and improperly interfered with Plaintiff's contract and contractual relationship by, among other things, inducing the Rite to terminate the contract and relationship or to request the same, with malice or unjustified wrongful motive or means, to or made performance of the contract impossible or impracticable.

90. As a result of Defendant's interference, the contract and contractual relationship was terminated and/or became impractical or impossible to perform, causing Plaintiff to suffer damages, including the lost pay and benefits of his position with the Rite.

## COUNT II
### DAVID GLATTLY and the ESTATE OF MONICA GLATTLY
### Defamation

91. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

92. Defendant made false and defamatory statements about Plaintiffs as set forth above.

93. These statements were published to third parties, including Active Members and Emeritus Members.

94. The statements were false, and Defendant knew or should have known that they were false or made the statements with reckless disregard for their truth or falsity.

13

95. As a direct and proximate result of Defendant's false and defamatory statements, Plaintiff Glattly has suffered damage to his reputation, emotional distress, and other damages in an amount to be proven at trial.

96. As a direct and proximate result of Defendant's false and defamatory statements, Monica Glattly suffered severe emotional distress and other damages in an amount to be proven at trial.

97. To the extent that existing case law may hold that a claim of defamation does not survive death, the Estate seeks in good faith to extend the existing law in this regard, based on the reasoning of the SJC set forth in *Harrison v. Loyal Protective Life Ins. Co.*, 379 Mass. 212, 214-215 (1979).

## COUNT III
### DAVID GLATTLY and the ESTATE OF MONICA GLATTLY
### Intentional Infliction of Emotional Distress

98. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

99. The Defendant engaged in conduct that was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

100. The Defendant's conduct was intentional and malicious, designed to cause Plaintiff severe emotional distress.

101. The conduct and actions of Defendant were the direct and proximate cause of substantial emotional distress suffered by Plaintiff, whose distress was severe and of such a nature that no reasonable person could be expected to endure it.

102. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered, and severe emotional distress, including but not limited to anxiety, depression, loss of sleep, and other severe and continuing mental anguish.

14

103.    Defendant's actions were carried out with reckless indifference to the likelihood that they

would cause emotional distress, and with a wanton and reckless disregard for the rights and

safety of Plaintiffs.

## VI. PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor

and against Defendant Kevin J. Hecht as follows:

1.  For general and compensatory damages in an amount to be determined at trial;

2.  For punitive damages in an amount to be determined at trial;

3.  For costs of suit herein incurred;

4.  For such other and further relief as the Court may deem just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all matters so triable.

David A. Glattly,
Estate of Monica Glattly
By their attorney

/s/ Adam P. Whitney

Dated: 7/1/24

Adam P. Whitney, BBO # 637777
Law Office of Adam P. Whitney
265 Franklin Street, Suite 1702
Boston, MA 02110
(617) 338-7000
awhitney@awhitneylaw.com

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 24CV1728 | Massachusetts Trial Court Superior Court |
|---|---|---|
| | | COUNTY |

| Plaintiff | David A. Glattly and Estate of Monica Glattly | Defendant: | Kevin J. Hecht |
|---|---|---|---|
| ADDRESS: | 2845 Kokomo Loop, Haines City, FL 33844 | ADDRESS: | 100-5B Joshuatown Road, Lyme, CT 06371 |
| | | | |
| | | | |
| Plaintiff Attorney: | Adam P. Whitney, Esq. | Defendant Attorney: | |
| ADDRESS: | 265 Franklin Street, Suite 1702, Boston, MA 02110 | ADDRESS: | |
| | | | |
| | | | |
| BBO: | 637777 | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B15 | Defamation | F | ☒ YES   ☐ NO |

*If "Other" please describe: _____

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO          Is there a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date

   1. Total hospital expenses _____

   2. Total doctor expenses _____   **RECEIVED**   7/1/24   tc

   3. Total chiropractic expenses _____

   4. Total physical therapy expenses _____

   5. Total other expenses (describe below) _____

                      Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below) $2,000,000.00

Lost wages and benefits, emotional distress, and other damages

                      TOTAL (A-F): $2,000,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X  Adam P. Whitney | Date:   July 1, 2024 |
|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X  Adam P. Whitney | Date:   July 1, 2024 |
|---|---|

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728

*3*

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                                            SUPERIOR COURT
                                                        C.A. NO: 2481CV01728

DAVID A. GLATTLY                           *
ESTATE OF MONICA GLATTLY                   *
            *Plaintiff,*                   *
                                           *              **RECEIVED**
                                           *
v.                                         *              8/14/2024
                                           *
KEVIN J. HECHT                             *
            *Defendant.*                   *

## AFFIDAVIT OF SERVICE BY CERTIFIED MAIL
## ON THE DEFENDANT KEVIN J. HECHT

I, Adam P. Whitney, Esq., being duly sworn, hereby depose and say:

1. I am an attorney at law, duly licensed to practice in the State of Massachusetts at the Law Office of Adam P. Whitney, located at 265 Franklin Street, Suite 1702, Boston, MA 02110, and I represent the Plaintiff, David A. Glattly, in the above-captioned matter.

2. On August 2, 2024, I mailed a copy of the Summons (attached hereto as Exhibit A), Cover Letter (attached hereto as Exhibit B), and Complaint in the above-captioned matter to the Defendant, Kevin J. Hecht, by United States Postal Service (USPS) Certified Mail, Return Receipt Requested.

3. The documents were mailed to the Defendant at the following address:
   100-5B Joshuatown Road, Lyme, CT 06371.

4. On August 8, 2024, I received an email from the Defendant (attached hereto as Exhibit C) acknowledging receipt of the Summons, Complaint, and First Request for Discovery served upon him.

5. On August 13, 2024, I received the certified mail return receipt (green card), attached hereto as Exhibit D, signed by Kim B. Hecht, confirming delivery of the Summons and Complaint to the Defendant at the above address.

ML

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*/s/ Adam P. Whitney*

_____

Dated: August 14, 2024

Adam P. Whitney, BBO # 637777
Law Office of Adam P. Whitney
265 Franklin Street, Suite 1702
Boston, MA 02110
(617) 338-7000
awhitney@awhitneylaw.com

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728

## CERTIFICATE OF SERVICE

I, Adam P. Whitney, counsel for David A. Glattly., served this on the Defendant, Kevin J. Hecht, via email.

*/s/ Adam P. Whitney*

Adam P. Whitney, BBO # 637777
Law Office of Adam P. Whitney
265 Franklin Street, Suite 1702
Boston, MA 02110
(617) 338-7000
awhitney@awhitneylaw.com

3

# EXHIBIT A

# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2481CV01728

**RECEIVED**
8/14/2024

David A. Glatfly
Estate of Monica Glatfly _____, PLAINTIFF(S),

V.

Kevin J. Hecut _____, DEFENDANT(S)



## SUMMONS

THIS SUMMONS IS DIRECTED TO ____Kevin J. Hecut____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the __Middlesex Superior__ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, __Middlesex superior__ Court, __200 Trade Center, 2nd Fl., Woburn MA 01801__ (address), by mail or in person, **AND**

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: __Law office of Adam P. Whitney, 265 Franklin St., Suite 1702, Boston, MA 02110__

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

ML

4. **Legal Assistance.** You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi Brieger, Chief Justice on ___August 1___, 20 24.

_____
Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

Dated:_____, 20_____         Signature:_____

**N.B.**   **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

_____
|                                                         |
|                                             , 20____    |
|_____|

# EXHIBIT B

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728


Law Office Of
**ADAM P. WHITNEY**

265 Franklin Street, Suite 1702
Boston, MA 02110
Phone: 617-338-7000
Fax: 857-488-4082
e-mail: awhitney@awhitneylaw.com
web: www.awhitneylaw.com

August 2, 2024

Mr. Kevin J. Hecht
100-5B Joshuatown Road
Lyme, CT 06371

**Via: First Class Mail and Certified Mail**

**Re: David Glattly and the Estate of Monica Glattly v. Kevin J. Hecht**

Dear Mr. Hecht,

Enclosed, please find the following documents in connection with the above-referenced matter:

1. Summons
2. Civil Action Cover Sheet
3. Complaint
4. Tracking Order
5. Plaintiff's First Set of Interrogatories
6. Plaintiff's First Request for Production of Documents.

If you have any questions or need further information, please do not hesitate to contact me at the address, phone number, or email provided above.

Thank you for your attention to this matter.

Sincerely,

*Adam P. Whitney*

Adam P. Whitney

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728

awhitneylaw.com Mail - David A. Glattly, Et Al v. Kevin J. Hecht

 Gmail

Adam Whitney <awhitney@awhitneylaw.com>

## David A. Glattly, Et Al v. Kevin J. Hecht

**Kevin J. Hecht** <kjh@kjhecht.com>
To: "awhitney@awhitneylaw.com" <awhitney@awhitneylaw.com>
Cc: "Kevin J. Hecht" <kjh@kjhecht.com>

Thu, Aug 8, 2024 at 8:27 AM

Attorney Whitney,

I hereby acknowledge receipt of documents served upon me regarding the above referenced matter, including but not limited to the Complaint, First Set of Interrogatories and First Request for Production of Documents.  Would you please e-mail me these documents in WORD so that I can provide responses to same?

Please let me know if you have any questions.

Kevin J. Hecht

# EXHIBIT C

# EXHIBIT D

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728

**First-Class Mail**
**Postage & Fees Paid**
**USPS**
**Permit No. G-10**

USPS TRACKING #

9590 9402 8924 4064 1074 10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Law Office of Adam P. Whitney
265 Franklin Street, Suite 702
Boston, MA 02110

Date Filed 8/14/2024 9:45 AM
Superior Court - Middlesex
Docket Number 2481CV01728

## SENDER: *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:



Kevin J. Hecht
100-5B Joshua town Road
Lyme, CT 06371

9590 9402 8924 4064 1074 10

2. Article Number *(Transfer from service label)*

9589 0710 5270 1343 8760 21

PS Form 3811, July 2020 PSN 7530-02-000-9053

## *COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X  Ken B. Hecht    ☑ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery
Kim B Hecht                          8/6/24

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt