UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID A. GLATTLY and<br>ESTATE OF MONICA GLATTLY,<br><br>    Plaintiffs,<br><br>v.<br><br>KEVIN J. HECHT<br><br>    Defendant. | Civil Action No. 1:24-cv-12102-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

    Defendant Kevin Hecht ("Hecht" or "Defendant"), by and through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submits this Memorandum of Law in support of his Motion to Dismiss the Complaint ("Complaint") filed by Plaintiff David Glattly ("Glattly") and the Estate of Monica Glattly (the "Estate") (collectively, "Plaintiffs").

**INTRODUCTION**

    Defendant's Motion to Dismiss should be allowed because Plaintiffs have failed to plead sufficient facts to support any cognizable legal claim.  In his Complaint, Glattly asserts a claim against Hecht for tortious interference with contractual relations (Count I), *Compl*. at ¶¶ 84–90, and claims for defamation and intentional infliction of emotional distress (Counts II and III).  *Id.* at ¶¶ 91–103.

    First, Glattly's tortious interference with contractual relations claim fails as a matter of law because Glattly was an elected official and, despite his unsupported assertion to the contrary, *Id.* at 85, did not have an enforceable employment contract with the Rite.  Further, Glattly has failed to plead sufficient facts to show that Hecht acted with improper motive.

Additionally, Plaintiffs' defamation claims fail as a matter of law for separate and distinct reasons. First, the Estate's claim fails because it is well-settled that a claim for defamation does not survive the death of the complaining party. Next, Glattly's defamation claim fails as he has failed to allege sufficient facts to support the claim, and even if he could allege such facts, Hecht had a conditional privilege to make the statements in question and Plaintiffs have failed to plead sufficient facts to show that Hecht abused the privilege.

Finally, Plaintiffs' claims for intentional infliction of emotional distress fail because mental and emotional distress resulting from harm to reputation and good name caused by the publication of alleged defamatory statements cannot give rise to a *separate* cause of action for intentional infliction of emotional distress. Further, Plaintiffs have failed to plead facts showing that Hecht engaged in conduct that was "extreme and outrageous."

## **RELEVANT FACTUAL BACKGROUND**[1]

Freemasonry is one of the world's oldest and largest fraternal organizations that espouses moral and ethical lessons through symbolic teachings and rituals. *Compl..* at ¶ 11. Freemasonry is structured around a system of degrees, which are progressive levels of membership. *Id.* at ¶ 12. As members progress through the degrees, there are appendant bodies and higher degrees, such as those in the Scottish Rite, which offer further teachings and rituals. *Id.* Once a member obtains the 33rd degree in the Scottish Rite, he is eligible to become an "Active Member." *Id.* at ¶ 13. An Active Member of the Scottish Rite of Freemasonry is a member who holds a position of significant responsibility and authority within the organization. *Id.* at ¶ 15. These individuals are typically part of the governing body known as the Supreme Council. *Id.* The Supreme Council is

---

[1] While this Court must take the allegations in the Complaint as true for purposes of this motion, the Defendant does not concede the allegations in the Complaint, and specifically denies any liability to Plaintiffs under any legal theory contained therein.

the highest authority in the Scottish Rite and is responsible for overseeing the activities, administration, and governance of the Rite within its jurisdiction. *Id.* The Supreme Council includes other officers and others who hold specific responsibilities within the organization. *Id.* Hecht is an Active Member of the Rite's Supreme Council and, during the relevant time period, also served as the Rite's Director of Human Resources. *See Id.* at ¶¶ 34–35, 42.

Plaintiff Glattly was elected to serve a two-year term as the Sovereign Grand Commander of the Scottish Rite for the Northeast Region. During Glattly's service as Sovereign Grand Commander, Glattly was Hecht's superior - - given Hecht's role at Director of Human Resources. *Id.* at ¶ 32.

On July 4, 2021, expressly acting as a whistleblower, Hecht distributed a letter (the "July 4th Letter") to Active Members of the Rite. *Id.* at ¶¶ 44–45. Among other things, Plaintiffs contend that, in the July 4th Letter, Hecht "falsely accused Glattly of 'immoral, unethical, un-Masonic and/or criminal conduct' . . . falsely accused Glattly of ballot fraud arising from the 2020 Annual Meeting . . . falsely accused and/or gave his own opinion of alleged improper hiring practices . . . falsely accused and/or gave his own opinion of the alleged improper discharge of employees . . . falsely accused and/or gave his own opinion of disparate treatment of employees of the Rite and two other related organizations and suggested that it was 'discrimination' . . . gave his opinion of an alleged toxic work environment at the Rite and complained that dissent was met with retaliation . . . complained that Glattly hired summer interns from DeMolay and allegedly paid for some lodging, meals, or clothes for the young men who served as interns . . . complained about bonuses to employees . . . falsely accused Glattly of permitting underage consumption of alcohol and falsely accused Glattly and Monica of public intoxication . . . made various false and/or misleading allegations and half-truths about personal expenditures and spending that he attributed to Glattly .

. . made false allegations about violations of the IRS Code . . . and accused Glattly and his wife, Monica, of 'self-dealing' for using credit card rewards." *Id.* at ¶ 51.  On July 8, 2021, Glattly provided a response to the July 4th Letter that concluding by stating "Mr. Hecht's accusations have placed a tremendous burden on my spouse and makes her second guess her role and participation in our Fraternity, this is the most disheartening of this entire situation." *Id.* at ¶ 56.  On July 9, 2021, Hecht emailed Active Members of the Rite and explained that his letter was not sent as a "disgruntled employee," but as a "disgruntled Active Member of the Supreme Council, NMJ." *Id.* at ¶ 57.  As an Active Member of the Supreme Council, Hecht also owed a fiduciary duty and obligation to protect the Rite, and to bring instances of alleged wrongdoing or mismanagement to the attention of other Active Members.  Plaintiffs contend that Hecht also "urged the Active Members to form an Investigative Committee to investigate Glattly." *Id.* at ¶ 58.

      Plaintiffs contend that the July 4th Letter and Hecht's urging led to an investigation that lasted for approximately two (2) years. *Id.* at ¶ 59.  Glattly appointed an Investigative Chair and other Active Members to the Investigative Committee. *Id.* at ¶ 60.  Plaintiffs contend that the investigation became "very stressful for Glattly and Monica" and that "Monica, in particular, was greatly affected by the allegations against her, and her health suffered greatly." *Id.* at ¶ 61.  Further, Plaintiffs contend that "Glattly also suffered a health setback that may have been related to the stress of the allegations against him and how they affected Monica." *Id.* at ¶ 62.  On August 13, 2021, the Investigative Committee announced that they had not found any criminal or illegal conduct, but informed Glattly that they wanted him to resign, and Glattly felt compelled to do so. *Id.* at ¶¶ 63, 65.  Glattly later announced his resignation while attending a formal session of the Rite in Cleveland. *Id.* at ¶ 66.

After Glattly's resignation, the Rite hired a law firm and accounting firm to conduct an investigation and audit of Glattly's leadership during his tenure. *Id.* at ¶ 67. The investigation and audit proceeded for many months. *Id.* In the Complaint, Plaintiffs contend that the investigation was "flawed and biased" and that "it became politically expedient for the Rite to accept the findings of the flawed and biased investigation." *Id.* at ¶¶ 68–75. Based on the investigation's findings, the Rite later publicly expelled Glattly from the Rite. *Id.* at ¶ 77. Plaintiffs contend that the Rite also disparaged Glattly to Active and Emeritus Members of the Supreme Council. *Id.*

## ARGUMENT

### A. GLATTLY'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS FAILS AS A MATTER OF LAW

"To make out a claim of tortious interference with contractual relations, a plaintiff must demonstrate that (1) he had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; and (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *BBJ, Inc. v. MillerCoors, LLC*, 2015 U.S. Dist. LEXIS 94705, at *7 (D. Mass July 21, 2015) (internal quotations and citations omitted).

#### 1. Glattly Did Not Have A Contract With The Rite

Glattly's claim for tortious interference with contractual relations fails as a matter of law because he did not have a contract with the Rite. In 2017, the Active Members elected Glattly to be Sovereign Grand Commander. *Compl.* at ¶ 19. However, contrary to Glattly's allegations in the Complaint, he did not sign an "Employment Agreement" with the Rite in connection with the election; rather, Glattly received a document, best described as a "pay schedule," outlining the

5

anticipated salary structure during his service as Sovereign Grand Commander.[2]  Glattly was an *elected* official, and the pay schedule document simply does not constitute a contract with the Rite but, rather, only served to notify Glattly of the pay he could expect to receive while serving as Sovereign Grand Commander.  For that reason, Glattly's claim for tortious interference with contractual relations fails.

### 2. Glattly Has Failed To Plead Sufficient Facts To Show Actual Malice

Even if the pay schedule did constitute a contract, which the Defendant does not concede, Glattly's claim still fails as a matter of law because he has failed to plead sufficient facts to show that Hecht acted with improper motive in raising his whistleblower claims to other Active Members of the Supreme Council.

In Massachusetts, there is a heightened standard to satisfy the third element of "improper motive or means" in the employment context. *Id.* at 269–70.  Specifically, where a plaintiff claims that an official or coworker has tortiously interfered with his employment, the plaintiff must also show that the official or coworker acted with "actual malice." *Id.* at 266 ("[t]he actual malice standard applies when 'the claim is asserted against an individual official of the employer.'") (quoting *Weber v. Cmty. Teamwork, Inc.*, 434 Mass. 761, 781 (2001)).  Plaintiffs' assert a tortious interference claim against Hecht, who, during the relevant period, served as Director of Human Resources for the Rite and was an Active Member of the Supreme Council.[3]  As such, Hecht was both a coworker and an official of the Rite, and the actual malice standard therefore applies in this case.

---

[2]  It is noteworthy that Glattly has not provided the Court with a copy of this alleged employment agreement as an exhibit to his Complaint, nor has he provided a copy of the July 4th Letter and transmittal email.

[3] Active Members are synonymous with being a member of a Board of Directors of a corporation.  The Supreme Council is the sole governing body of the Rite and its affiliated corporations.  Active Members of the Supreme Council, unlike Honorary Members and Emeritus Members, have the right to vote and influence decisions by the Supreme Council.  As such, Active Members, just as corporate directors, owe a fiduciary duty to act in the Rite's best interest.

To show "actual malice," Glattly must plead sufficient facts to establish that Hecht acted with "a spiteful, malignant purpose unrelated to a legitimate corporate interest." *Blackstone v. Cashman*, 448 Mass. 255, 270 (2007).  Further, Glattly must present evidence to establish that malice was the "controlling" factor for Hecht's conduct.  *Id.* (malice must be the "controlling" factor in defendant's conduct); *see also Alba v. Sampson,* 44 Mass. App. Ct. 311, 315 (plaintiff must show "a purpose unrelated to *any* legitimate corporate interest, was the controlling factor" in defendant's conduct) (emphasis added).

> ### *i.     Hecht's Conduct Was Related to the Rite's Corporate Interests*

As an initial matter, Hecht's July 4th Letter and accompanying email, each sent as a "whistleblower" were related to legitimate corporate interests of the Rite.  Contrary to Glattly's claim, Hecht only sent the July 4th Letter to Active Members of the Rite, namely, those members who were actively involved in the Rite's operations and who had the ability to investigate and take necessary corrective action.  *Id.*  Had Glattly provided the Court with a copy of the July 4th Letter and transmittal email, this fact would be clear.  Further, each of Hecht's accusations, opinions, and complaints in the Letter, as well as his alleged "urging" for an investigation into Glattly, were closely related to legitimate corporate interests—namely, the economic and reputational harm arising from Glattly's ongoing practices and conduct as Sovereign Grand Commander.  *Id.* Thus, Hecht's conduct was certainly related to the legitimate corporate interests of the Rite.

> ### *ii.     Glattly Has Not Plead Sufficient Facts to Show Malice Was Controlling Factor In Hecht's Conduct.*

In an attempt to show Hecht acted with a "malignant purpose," Glattly generally asserts that "Hecht apparently did not like Glattly's management style or Glattly personally." *Compl.* at ¶ 33.  He then presents several specific instances to support his general assertion: he once overheard Hecht "disparaging him to another Active Member"; that Hecht was "apparently

7

angered" after being ordered to terminate Lisa Smith; that Hecht "complained loudly" about returning to the office in June 2021; and Hecht notified others that he wished to become the next Sovereign Grand Commander. *Id.* at ¶¶ 34–40. However, even assuming Hecht did not personally like Glattly or that he did wish to become the next Sovereign Grand Commander, such facts alone do not support an inference that Hecht had a malignant purpose "unrelated to legitimate corporate interests." *See Kelleher v. Lowell General Hospital*, 98 Mass. App. Ct. 49, 55–56 (2020) (citing *Alba,* 44 Mass. App. Ct. at 316 (plaintiff's evidence was not sufficient where the evidence showed that at least some of defendant's motivations — such as a concern that the defendant had difficulty working with the plaintiff — were animated by the interests of the company); *Gram v. Liberty Mut. Ins. Co.,* 384 Mass. 659, 663–65 (1981) (evidence insufficient to support tortious interference claim even though there was evidence that defendants did not like plaintiff, and defendants had initiated complaint that led to plaintiff's discharge).[4] Furthermore, given the strong nexus between Hecht's conduct and the Rite's legitimate corporate interests, such isolated and mild interactions between Glattly and Hecht are insufficient to establish that malice "controlled" Hecht's conduct. Thus, because Glattly has failed to present sufficient facts to show that malice controlled Hecht's conduct, Glattly cannot satisfy the third element of his claim. Accordingly, Glattly's claim for tortious interference with contractual relations should be dismissed.

---

[4] In what may have been Glattly's strongest claim to suggest that Hecht acted with improper motive—that Glattly planned to move Hecht to a different position—Glattly states that "the *circumstantial evidence suggests*" that one person on the management team informed Hecht about the potential transfer. In other words, Glattly has not sufficiently alleged that Hecht had actual knowledge about his potential transfer to support an inference of improper motive. Furthermore, Glattly does not explain what circumstantial evidence he is relying on in making his assertion. Presumably, Glattly is making an assumption that, based on the temporal proximity between his meeting with his management team and Hecht's publishing of the July 4th Letter, someone at the meeting *must have* informed Hecht of the potential transfer. However, such speculation is plainly insufficient to establish that Hecht had actual knowledge regarding his potential transfer or that his actions were in any way related to his transfer.

B. **PLAINTIFFS' DEFAMATION CLAIMS FAIL AS A MATTER OF LAW**

Plaintiffs' claims for defamation fail for several separate and independent reasons. As a general matter, the Supreme Judicial Court of Massachusetts has recognized that "defamation is a traditionally disfavored action." *Eyal v. Helen Broadcasting Corp.*, 411 Mass. 426, 432 n.7 (1991). With this in mind, Plaintiffs' defamation claims are deficient for several reasons warranting dismissal, including first, that The Estate has no claim for defamation; second, that. Glattly has failed to sufficiently plead his defamation claim; and third, that as an Active Member of the Supreme Council, Hecht possessed a conditional privilege to make the comments contained in the July 4th Letter and as described in the Complaint.

   **1. The Estate Has No Claim For Defamation**

Under Massachusetts law and M.G.L. c. 228 § 1, an action for defamation does not survive the death of the complaining party. *Nodal v. Barrett*, 2011 Mass. App. Unpub. LEXIS 921, at *6–7 (Mass. App. 2011); *Harrison v. Loyal Protective Life Ins. Co.*, 379 Mass. 212, 214 (1979).

The Court should reject Plaintiffs' request to extend the survival statute to defamation in this case for several reasons. First, Massachusetts courts since 1874 have consistently held that the defamation does not survive the death of the complaining party. *See Cummings v. Bird*, 115 Mass. 346 (1874); *Nodal*, 2011 Mass. App. Unpub. LEXIS 921, at *6–7. Furthermore, in *Harrison*, *supra,* the case Plaintiffs cite to support their request, the court expressly acknowledges that libel has long been held not to fall within the survival statue's language. *See Harrison*, 379 Mass. at 214 ("the court held actions for . . . libel . . . did not survive under the statute"). Finally, there are no extraordinary facts or circumstances surrounding this case that warrant a departure from the well-settled precedent in Massachusetts.

Therefore, because it is well-settled that an action for defamation does not survive the death of the complaining party and there are no extraordinary facts or circumstances in this case to support overturning Massachusetts precedent, The Estate's claim for defamation should be dismissed.

### 2. Glattly Has Not Alleged Sufficient Facts to Support His Defamation Claim

To survive a motion to dismiss, a defamation plaintiff must establish that "(1) the defendant published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact (as opposed to opinion); (3) the defendant was at fault for making the statement, and any privilege that may have attached to the statement was abused; and (4) the plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." *Barnia v. Kaur*, 646 F. Supp. 3d 154, 170 (D. Mass Dec. 5, 2022).

#### i. *Hecht' Statements Were Protected By Conditional Privilege*

Glattly's defamation claim fails because Hecht's alleged defamatory comments were protected by the conditional business privilege, and Plaintiffs have not plead sufficient facts to establish that Hecht abused the privilege.

As a preliminary matter, courts may consider whether a defendant's alleged defamatory statements were protected by a conditional privilege when ruling on a motion to dismiss. *See, e.g., Barnia*, 646 F. Supp. at 171; *Barthelmes v. Kimberly-Clark Corp.*, 2014 U.S. Dist. LEXIS 183115, at *32 (D. Mass Aug. 11, 2014). Massachusetts courts recognize the conditional business privilege, "which protects the publication of otherwise defamatory statements if doing so was 'reasonably necessary' for 'the protection or furtherance of a legitimate business interest.'" *Barnia*, 646 F. Supp. 3d at 171 (citing *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 512–13 (Mass. 1984) ("Massachusetts courts have recognized that a person may possess a

conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest."); *see also* J.R. Nolan & L.J. Sartorio, Tort Law § 7.13, at 221 (3d ed. 2005) (conditional privilege exists if publisher and recipient share common interest, and communication is "reasonably calculated to protect and to further such common interest").

There can be no dispute that Hecht's publication of the allegedly defamatory statements in his July 4th Letter to Active Members of the Supreme Council was reasonably necessary to protect the Rite from further economic and reputational harm arising from Glattly's ongoing practices and conduct as Sovereign Grand Commander—a legitimate business interest. Further, at the time of the July 4th Letter, and as previous described, Hecht was himself an Active Member of the Supreme Council and the Rite's Director of Human Resources, and, thus, owed a fiduciary duty to report misconduct and malfeasance that could potentially harm the Rite or its interests. Additionally, each of Hecht's allegedly defamatory comments in the July 4th Letter directly related to the legitimate business interests of the Rite and its members. As such, Hecht's comments were protected by the conditional business privilege.

### ii.   *Plaintiffs Did Not Plead Sufficient Facts to Establish Abuse of Privilege*

A publisher can lose a conditional privilege through "unnecessary, unreasonable, or excessive publication" on proof that the defendant acted "recklessly." *Barthelmes*, 2014 U.S. Dist. LEXIS 183115, at *32 (citations omitted); *see also Barnia*, 646 F. Supp. 3d at 171 (conditional business privilege did not apply where "defendant publish[ed] the statements recklessly or with knowledge of their falsity"). "[The] privilege generally encompasses publication to a narrow group of individuals who share a common interest in the communication. Consequently, publication to a wide range of individuals will obviate the privilege where the employer acts

11

recklessly." *Barthelmes*, 2014 U.S. Dist. LEXIS 183115, at *32–33 (quoting *Masso v. United Parcel Serv. of Am., Inc.*, 884 F. Supp. 610, 621 (D. Mass. 1995)).

In the Complaint, Plaintiffs contend that "to the extent Hecht had any privilege, Hecht abused and exceeded his privilege, as his allegations and publication of the letter were excessive." *Compl.* at ¶ 49. However, Plaintiffs have pleaded no facts to establish that Hecht published his comments "recklessly or with knowledge of their falsity." Therefore, Plaintiffs have not sufficiently plead facts showing Hecht abused the conditional business privilege when he published his comments in the July 4th Letter.

Additionally, contrary to Plaintiffs' allegations, Hecht sent the July 4th Letter to only Active Members of the Rite and did not send the letter to Emeritus Members, as alleged by Plaintiffs. *See* fn. 2, *supra.* By doing so, Hecht reasonably limited the publication of his letter to only those members who were actively involved in the Rite's operations and who had the ability to investigate and take necessary corrective action. Thus, Hecht's publication was in no way "excessive." Furthermore, even if we assume that Hecht did send the letter to all Active Members *and Emeritus Members*, as alleged by Plaintiffs, each of those individuals also share a common interest in the prosperity and success of the Rite, and Hecht's comments regarding Glattly's problematic leadership were reasonably necessary to protect and further that common interest. Thus, even assuming Plaintiffs allegation as true, Hecht's publication still was not excessive.

Finally, to the extent Plaintiffs argue that Hecht's *allegations* were excessive because Hecht's statements included allegations regarding Monica Glattly, such argument is similarly unavailing. The Complaint makes clear that Monica Glattly was heavily involved in the Rite. According to the Complaint, Ms. Glattly "served in an unofficial capacity as an ambassador for the Rite, similar not the role of a First Lady to the President of the United States . . . when Glattly

12

became Sovereign Grand Commander, [she] had to leave everything behind to serve with him . . . includ[ing] her career, friends, family, and children . . . [and] [a]long with Glattly, [she] committed her like to the Rite." *Compl.* at ¶¶ 26–27.  The Complaint continues: "[Ms. Glattly's] devoted support of Glattly and dedication to the Rite included hosting and participating in social events, charitable activities, and other community functions associated with the organization . . . [She] frequently traveled with Glattly to various Scottish Right events. Among her volunteer responsibilities included: hosting the Scottish Rite ladies; managing and decorating the Commander's house; hosting guests at the house; travel arrangements for the Commander; sending sympathy and get-well baskets and floral arrangements as needed; and many other duties." *Compl.* at ¶¶ 28–29.

Given Ms. Glattly's extensive involvement with the Rite and notable visibility in her unofficial capacity as an ambassador for the Rite, Ms. Glattly's ongoing conduct and behavior posed a significant risk of harm to the Rite and its interests.  Thus, Hecht's statements regarding Ms. Glattly were consistent with his conditional privilege and reasonably necessary to protect the Rite's legitimate business interests.  As such, Hecht's statements were not excessive or an abuse of the conditional privilege.

### C. PLAINTIFFS' CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAIL AS A MATTER OF LAW

#### 1. Plaintiffs' Allegations Do Not Meet the Pleading Standard For Intentional Infliction of Emotional Distress

Plaintiffs' claim of intentional infliction of emotional distress should be dismissed because they have failed to plead sufficient facts to establish their claims.

As an initial matter, "[e]motional distress resulting from harm to reputation and good name caused by the publication of defamatory statements cannot give rise to a separate action for

intentional infliction of emotional distress." *Moss v. Camp Pemigewassett, Inc*., 312 F.3d 503, 510 (1st Cir. 2002). "Instead, mental and emotional harm resulting from damage to reputation may be compensated in the form of damages for emotional distress in the defamation action." *Id.* Thus, Plaintiffs cannot rely on mental and emotional harm allegedly caused by Hecht's publication of the July 4th Letter in bringing their claim for intentional infliction of emotional distress, as such harm may be compensated in the form of damages for emotional harm in their defamation claims.

"To state a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must allege '(1) that the defendant either intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff emotional distress; and (4) that the emotional distress was severe and of a nature that no reasonable person could be expected to endure it.'" *Vaiano v. Apple Inc*., 2024 U.S. Dist. LEXIS 120910, at *3–4 (D. Mass July 10, 2024) (quoting *Brown v. JPMorgan Chase & Co*., 2023 U.S. Dist. LEXIS 86171, 2023 WL 3511363, at *3 (D. Mass. May 17, 2023)). "The standard for making a claim of intentional infliction of emotional distress is very high." *Doyle v. Hasbro, Inc*., 103 F.3d 186, 195 (1st Cir. 1996).

Even accepting all of Plaintiffs' allegations as true, there is no reasonable dispute that Hecht's conduct was not "extreme and outrageous." "Recovery for an [intentional infliction of emotional distress] claim generally requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Brown v. JPMorgan Chase & Co*., 2023 U.S. Dist. LEXIS 86171, at *7 (D. Mass. May 17, 2023) (quoting *Doyle v. Hasbro, Inc*., 103 F.3d 186, 195

(1st Cir. 1996)) (internal quotations omitted). "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" *Polay v. McMahon*, 468 Mass. 379, 386 (2014) (quoting *Roman v. Trustees of Tufts College*, 461 Mass. 707, 718 (2012)). A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level. *Polay*, 468 Mass. at 386.

In the Complaint, Plaintiffs allege only that Hecht published a disparaging and defamatory letter and later "urged Active Members to form an Investigative Committee to investigate Glattly." *Compl.* ¶ 58. Since Plaintiffs may not rely on any mental or emotional harm caused by the alleged defamatory latter, Plaintiffs must base their intentional infliction claims solely on Hecht's urging of the investigation into Glattly. However, such conduct plainly does not come close to "extreme and outrageous." *See, e.g., Polay*, 468 Mass. at 387 (no extreme and outrageous conduct for defendant's single" verbal attack" and constant video surveillance intended to harass plaintiffs); Restatement (Second) of Torts § 46, comment d, illustration 4 (1965) (no extreme and outrageous conduct where individual "calls [telephone operator] a God damned woman, a God damned liar, and says that if he were there he would break her God damned neck").

Therefore, because Plaintiffs have failed to plausibly plead their claims for intentional infliction of emotional distress, the claims should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that Plaintiffs' Complaint be dismissed in its entirety in accordance with Fed. R. Civ. P. 12(b)(6). Even when read in the light most favorable to Plaintiffs, the allegations do not set forth any viable legal claim upon which relief can be granted.

        Respectfully submitted,

        Kevin J. Hecht,

        By his attorney,

        */s/ Paul V. Kelly*_____
        Paul Kelly (BBO #267010)
        Sam Brewster (BBO #714258)
        JACKSON LEWIS P.C.
        75 Park Plaza, 4th Floor
        Boston, MA 02116
        Tel: (617) 367-0025
        Paul.Kelly@jacksonlewis.com
        Sam.Brewster@jacksonlewis.com

Dated: September 13, 2024

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date, a true copy of the foregoing document was served on all counsel of record via the Court's ECF system.

        */s/ Paul V. Kelly*_____
        Paul V. Kelly
        Jackson Lewis P.C.

4855-3137-0723, v. 2